UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GEORGE HOUSTON,

       Petitioner,

                              Case No. 8:12-CV-561-T-24TBM
                                      8:09-CR-379-T-24TBM

UNITED STATES OF AMERICA,

       Respondent.

_____/

## O R D E R

    This cause comes on for consideration of Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Cv-D-1; Cr-D-190), as amended (Cv-D-7), the United States' Response in Opposition to Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Cv-D-16), Petitioner's reply (Cv-D-18), and Petitioner's motion styled "Motion for Leave to Supplement and Amend his Section 2255 Motion Pursuant to 28 U.S.C. § 2255(f)(1) Filed on June 21, 2012, with Additional Supporting Authorities, Facts and Law from the Supreme Court's Recent Decision of Alleyne v. United States, Case Number 11-9335 (decided June 17, 2013)" (Cv-D-19).

    Petitioner, his son Everrick Houston, and Lorenzo Carnes were charged with conspiracy to possess with the intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii) and 846. Petitioner retained attorney Mark Rodriguez to represent him. Petitioner appeared before the

Court December 3, 2009, for a change of plea hearing. (Cr-D-92, 192.) Petitioner ultimately chose not to change his not guilty plea and to proceed to trial. Everrick Houston pled guilty on December 4, 2009, three days prior to the trial. The trial of Petitioner and co-defendant Carnes commenced on December 7, 2009. Everrick Houston testified against Petitioner and Carnes. Several other co-conspirators also testified. On December 11, 2009, a jury found Petitioner and Carnes guilty of the charge. On March 4, 2010, the Court sentenced Petitioner to a term of imprisonment of 240 months.

Attorney Ciaravella was allowed to withdraw, and attorney Ryan Truskoski was appointed to represent Petitioner on appeal. Petitioner sent Truskoski correspondence and proposed appellate issues. (Cv-D-1, p. 32.) Truskoski advised Petitioner that there was only one possible meritorious issue. (Id.) Specifically, the issue on appeal was whether this Court abused its discretion by admitting into evidence Petitioner's 1992 conviction for distribution of cocaine base. The Eleventh Circuit found that the error, if any, was harmless because the other evidence of Petitioner's guilt, including the testimony of the undercover DEA agent, co-defendant Everrick Houston, co-conspirator Joey Dunlap, and the tape and video recording of the meetings with the confidential informant, was overwhelming. Petitioner's conviction was therefore affirmed. United States v. Houston, 418 Fed. Appx.

2

891 (11th Cir. 2011) (per curiam).

Petitioner timely filed his § 2255 motion raising various claims. (Cv-D-1.) Petitioner's original motion presents his claims in a confusing and disjointed manner. Having carefully reviewed the motion and memorandum, the Court finds Petitioner raises the following claims: (1) the Court lacked jurisdiction over the case; (2) his conviction is void because he was entrapped; (3) his counsel failed to raise these two claims on appeal despite his request that he do so; (4) his counsel's performance was constitutionally ineffective in failing to raise a <u>Batson</u> challenge during jury selection and preserve it for appellate purposes; and (5) his counsel failed to raise certain issues on appeal as instructed by Petitioner.

On April 20, 2012, Petitioner filed a motion seeking to amend his § 2255 motion to include two additional ineffective assistance of counsel claims. (Cv-D-7.) Specifically, Petitioner claims his counsel failed to: (1) object to the testimony of Everrick Houston and Lorenzo Carnes as violative of <u>Bruton</u>; and (2) file a motion to suppress. The Court granted the motion to amend and allowed the original § 2255 motion to be amended to include these two additional claims.

The Government responds that most of Petitioner's claims are procedurally barred because they were not raised on direct appeal. The Government also argues that Petitioner's jurisdictional

3

arguments are contrary to existing precedent.  With regard to the entrapment claim, the Government contends that there was no proof at trial establishing entrapment.   The Government argues that defense counsel was not constitutionally ineffective in failing to raise a Batson challenge as his co-counsel unsuccessfully raised the claim.   The Government continues that Petitioner's claim of ineffective assistance of counsel in failing to raise viable claims on appeal is vague.  Finally, the Government argues that there was no Bruton error and no basis to file a motion to suppress.

Petitioner filed his reply to the Government's response reiterating his claims.  (Cv-D-18.)  On August 7, 2013, Petitioner filed a second motion to amend or supplement his § 2255 motion based on Alleyne v. United States, --- U.S. ----, 133 S.Ct. 2151, 2155 (2013).  (Cv-D-19.)  Petitioner contends that the Government failed to charge his prior drug offenses in the Indictment and submit them to a jury for determination and, as such, his sentence should not have been enhanced pursuant to 21 U.S.C. § 851.   To date, the Government has not responded to that motion.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel require a showing of the two-prong test as set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  In order to succeed under the Strickland test, a movant has the burden of proving: (1) deficient performance by counsel; and (2) prejudice resulting

therefrom. Id. at 687.

The first prong of the Strickland test requires the Court to determine whether trial counsel performed below an "objective standard of reasonableness," while viewing counsel's challenged conduct on the facts of the particular case at the time of counsel's conduct. 466 U.S. at 688, 690. Notably, there is a strong presumption that counsel rendered adequate assistance and made all significant decisions with reasonable and competent judgment. Id.

A counsel's performance is deficient if, given all the circumstances, his or her performance falls outside of accepted professional conduct. Strickland, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy." Chandler v. United States, 218 F.3d 1305, 1313-14 (11th Cir.2000) (en banc) (quoting Strickland, 466 U.S. at 689 and Darden v. Wainwright, 477 U.S. 168 (1986)). Rather, for counsel's conduct to be unreasonable, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." Chandler, 218 F.3d at 1315.

The Supreme Court has consistently held that "as a matter of law, counsel's conduct ... cannot establish the prejudice required for relief under the second [prong] [o]f the Strickland inquiry."

Nix v. Whiteside, 475 U.S. 157, 175 (1986). This admonition emphasizes the stringent requirement that if a petitioner does not satisfy both prongs of the Strickland test, "he will not succeed on an ineffective assistance claim." Zamora v. Dugger, 834 F.2d 956, 958 (11th Cir. 1987). See also Weeks v. Jones, 26 F.3d 1030, 1037 (11th Cir. 1994). Therefore, a court may resolve a claim of ineffective assistance of counsel based solely on lack of prejudice without considering the reasonableness of the attorney's performance. Waters v. Thomas, 46 F.3d 1506, 1510 (11th Cir. 1995) (citing Strickland, 466 U.S. at 697).

With regard to the second prong, the petitioner must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, at 694-95. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." Id. at 694. A petitioner must show a "substantial, not just conceivable, likelihood of a different result." Cullen v. Pinholster, --- U.S. ----, 131 S.Ct. 1388, 1403 (2011) (citation omitted).

With the foregoing standard in mind, the Court turns to Petitioner's claims.

## I.   LACK OF JURISDICTION

Petitioner first claims that the Court lacked jurisdiction over the case. Petitioner asserts that his drug offenses were

6

state crimes and should have been left to the local authorities to prosecute.   He also contends that the offenses did not occur on Federal property.   He attacks the constitutionality of Titles 18 and 21 and contends that they violate Article III, Section 2 of the Constitution as well as the Fifth, Eighth, Tenth, and Fourteenth Amendments, article I Section 8, clause 17, and the Establishment Clause.   Petitioner also claims his counsel was ineffective in failing to raise these jurisdictional claims.

All of Petitioner's jurisdictional arguments are utterly friviolous.   The Court had subject matter jurisdiction over Petitioner's case pursuant to 18 U.S.C. § 3231 which gives the federal courts original jurisdiction over "all offenses against the laws of the United States."   The Superseding Indictment charged drug offenses that are against the laws of the United States: 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii) and 846.   The Supreme Court has found that the Controlled Substances Act a valid exercise of Congressional power. <u>Gonzales v. Raich</u>, 545 U.S. 1, 9 (2005); see also <u>United States v. Lopez</u>, 459 F.2d 949 (5th Cir. 1972)[1] (the court upheld Congress' power to enact 21 U.S.C. § 841(a)). Furthermore, the Eleventh Circuit has repeatedly rejected claims attacking the constitutionality of the Government's power to

---

[1] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit held that all decisions made prior to October 1, 1981, by the former Fifth Circuit are binding precedent in the Eleventh Circuit.

regulate trafficking.  United States v. Jackson, 111 F.3d 101 (11th
Cir. 1997).  Additionally, the offenses need not occur on federal
property for Congress to have authority to criminalize the conduct.
Smith v. United States, Nos. 2:09-Cv-11-FtM-29DNF, 2:07-cr-19-FtM-
29DNF, 2011 WL 6013805, at *2 (M.D. Fla. Dec. 2, 2011) (the
district court found that subject matter existed over the
defendant's case in which the indictment charged violation of 21
U.S.C. § 841(a)(1), and "this is the beginning and end of the
jurisdictional inquiry.) (citation omitted); Garcia v. United
States, Nos. 2:07-Cv-221-FtM-29DNF, 2:04-cr-16-FtM-29DNF, 2009 WL
2781636, at *3-4 (M.D. Fla. Aug. 28, 2009) (the court found that
the drug offenses charged did not need to be committed on federal
property in order for Congress to criminalize the conduct).  Thus,
this Court had subject matter jurisdiction pursuant to § 3231.
United States v. Quinto, 264 Fed. Appx. 800 (11th Cir. 2008) (per
curiam) (district court had subject matter jurisdiction over
defendant charged with drug offenses in violation of 21 U.S.C. §§
846 and 841); United States v. Brown, 227 Fed. Appx. 795, 798 (11th
Cir 2007) (per curiam).  Consequently, Petitioner's jurisdictional
claims are without merit.

Petitioner's Tenth Amendment claim is also frivolous.  Courts
have repeatedly found that 21 U.S.C. § 841 does not violate the
Tenth Amendment.  Rinaldi V. Zickefoose, 532 Fed. Appx. 64, 65 n.3
(3d Cir.) (per curiam), cert. denied, 134 S.Ct. 442 (2013);

8

Thompson v. Holder, 480 Fed. Appx. 323, 325 (5th Cir. 2012) (per curiam) ("the CSA does not violate the Tenth Amendment"), cert. denied, 133 S.Ct. 586 (2013); United States v. Bouman, 52 Fed. Appx. 280, 281 (7th Cir. 2002) (the court noted that it had held that the provisions of 21 U.S.C. § 841 do not violate the Tenth Amendment); United States v. Wacker, 72 F.3d 1453, 1475 (10th Cir. 1995).

Petitioner's reliance on Bond v. United States, 131 S.Ct. 2355 (2011) is misplaced. Bond did not determine that any statute at issue in this case was a violation of the Tenth Amendment. Turner v. United States, No. 2012 WL 3848653, at *25 (N.D. Ala. Aug. 30. 2012), citing United States v. Schumaker,479 Fed. Appx 878, 885 (11th Cir.), cert. denied, 133 S.Ct. 387 (2012).

Petitioner's claim of ineffective assistance of counsel based on the failure to raise these jurisdictional issues also fails. Counsel is not ineffective for failing to raise claims "reasonably considered to be without merit." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000).

## II. ENTRAPMENT

Petitioner next claims that his conviction is void as he was entrapped. He further claims that his counsel was ineffective in failing to present an entrapment defense. He also argues that his counsel failed to argue that the Government did not establish a conspiracy. In support of his contentions, Petitioner claims that

his statement that at a meeting with an undercover officer, Agent Levi Cobarras, on October 8, 2008 that "he is not there to do that anymore" was sufficient to establish that the evidence did not show a conspiracy beyond a reasonable doubt.

The Government argues that there was sufficient evidence to support the jury's finding of a conspiracy beyond a reasonable doubt.  It further agues that Petitioner has not demonstrated prejudice because there was no proof at trial establishing entrapment.

Petitioner is incorrect that his counsel failed to argue that the evidence did not establish a conspiracy.  At the close of the Government's case, attorney Ciaravella moved for a judgment of acquittal.  (Cr-D-164, p. 74.)  In doing so, he argued that there was no evidence of any actual agreement by any party.  (Id.) Carnes' attorney joined in the motion and argued that the evidence did not show a common plan or scheme to actually possess cocaine. (Id. at p. 74-75.)  The Court concluded there was sufficient evidence to justify a reasonable jury in returning a guilty verdict and denied the motion.  (Id. at p. 77.78.)  In closing, Ciaravella argued to the jury that the fact that a deal never occurred showed there was no agreement to possess or distribute cocaine.  (Cr-D-178, p. 19-20, 26.)

While Petitioner argues that his October 8, 2008 statement to Cobarras that he "ain't trying to do none of that anymore. Been

there done that," established reasonable doubt as to his guilt,
Petitioner takes his statement out of context.   A review of the
transcript of the October 8, 2008 meeting demonstrates that
Petitioner told Cobarras that he had been in the drug business but
got out after he served a prison sentence.   (GX 1a, p. 3.)   He
stated that while he built boats, he "need[ed] money."   (Id.)
Petitioner went on to negotiate the purchase of cocaine and asked
to test the product.   (Id. at p. 3-16.)   Petitioner reiterated he
was "strictly in it for the money" and that he was "running a
little tight."   (Id. at p. 18.)   He called his son Everrick Houston
to come outside to see the cocaine.   Everrick Houston then made a
phone call and said the person would "do six right now" and then
"grab the other four."   (Id. at p. 18-22.)   Petitioner agreed they
would meet back at Applebee's in 90 minutes with the cash.   (Id. at
p. 22.)

With regard to Petitioner's claim that he was entrapped, the
affirmative defense of entrapment requires:   (1) government
inducement of the crime; and (2) lack of predisposition on the part
of the defendant.   United States v. Sistrunk, 622 F.3d 1328, 1333
(11th Cir. 2010).   Petitioner fails to show he was induced by the
Government or that he was not predisposed to deal in drugs.
Specifically, the evidence at trial demonstrated that co-Defendant
Carnes recruited Petitioner and introduced him to Sammy.   (GX 19d.)
At a meeting on October 1, Petitioner suggested Sammy bring a

11

kilogram to test.   (GX 20b.)

On October 8, 2008, when Petitioner and his co-defendants met Sammy and Cobarras, who was posing as the supplier, at an Applebee's, Petitioner took the lead in the negotiations. Petitioner complained to Cobarras that he had had trucks parked and ready to load.   (Gx 1a, p. 1-2.) Petitioner told Cobarras that he could do "ten today or you can do a little more than that, all I got to do is make some calls."   (Id. at p. 6.) He explained the buyers would come and "[t]hen we take the machine out, we mark em, make sure everything and all that so then everything be straight." (Id. at p. 12.)   Petitioner told Cobarras, "now that product you got.   I do need it to be tested.   Now I mean."   (Id. at p. 16.) When Cobarras asked Petitioner if he had a knife, Petitioner said "No, because what I usually do I do either bleach or one of them little things you know what I'm saying.   But see my son is old school, but he like to put a little bit on and cook it back, that's my son."   (Id.)

Cobarras said he would show Petitioner one kilogram and asked if Petitioner's son wanted to take a look at it.   (Id. at p. 17.) As indicated above, Petitioner called his son to come outside. Everrick Houston came out to the car, inspected the cocaine, and, after making a phone call, said they would "do ten."   (Id. at p. 19-22.)   The men agreed to meet back at Applebee's in an hour in a half and show the cash to Sammy at which point they would be told

12

a separate location to pick up the cocaine.  (<u>Id.</u> at p. 22.)

Ultimately, Petitioner and his co-defendants did not return to Applebee's with the money.    However, on October 28, 2008, Petitioner spoke with Cobarras and agreed to purchase five kilograms.    At that time he assured Cobarras that once they completed the first deal, Petitioner could distribute 30 to 40 kilograms a week.  (GX 5a, p. 11.)

Given the evidence presented at trial, Petitioner has not shown that entrapment was a viable defense.  As such, his counsel cannot be found to have  acted deficiently in failing to argue entrapment.   Nor has Petitioner demonstrated any prejudice as a result of the failure to raise the affirmative defense.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL - <u>BATSON</u> CLAIM

Petitioner next claims that his counsel was ineffective in failing to object to a <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), violation and preserve the issue for appeal.   Petitioner argues that his counsel should have objected to the Government using a peremptory challenge to strike a potential juror because of his Jamaican descent.

The  Government  points  out  that  Carnes  and  Petitioner participated in jury selection as a "unit," and that co-defendant Carnes' counsel objected when the Government struck the juror.  The Government continues that Petitioner fails to raise any other argument  his  counsel  should  have  made  and  fails  to  show  a

13

discriminatory purpose behind the strike.

During jury selection, after the Government struck Mr. Hyacinth, Juror Number 112, the attorney for co-defendant Carnes asked for a race neutral reason. (Cr-D-161, p. 78.) The AUSA, in response, noted that he had not struck another African-American juror so race was not an issue. He continued:

> as it relates to Mr. Hyacinth, Judge, I believe he indicated he's from Jamaica. There's going to be evidence in this case where the agents, as well as the informant in this case, pick a country where the informant is to be from and it's Jamaica. So, I don't want to prejudice the Government in any way as it relates to the suggestion that drug dealers are from Jamaica or such and such.
>
> So that is my race neutral reason for striking Mr. Hyacinth. And again, I note Judge, that we had no objection to Mr. Chatman.

(Id. at 78-79.)

The AUSA further explained that there would be evidence introduced during trial about drug dealers from Jamaica and that he did not want to take the chance of offending Hyacinth. (Id. at 80-82, 93.) The Court found an appropriate basis for the strike and, as such, implicitly found that the strike was not racially motivated. (Id. at 93.)

Petitioner fails to demonstrate he was prejudiced by his counsel' failure to pursue the Batson issue during voir dire or on appeal. He does not assert any argument his counsel should have made that was not made by co-counsel; nor has he shown there is a reasonable probability the issue would have been successful on

14

appeal.

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL IN FAILING TO RAISE MERITORIOUS ISSUES AS DIRECTED BY PETITIONER

Petitioner next claims that his appellate counsel was ineffective in failing to raise issues on appeal as instructed by Petitioner. He states, "[o]n appeal, counsel could have raised issues pertinent to the conviction as well as the sentence imposed," and that counsel could have "readily determined that there existed viable claims sufficient for review." (Cv-D-1, p. 14.)

Petitioner fails to identify any specific appellate issues he sought his attorney to raise. Nor has he identified any meritorious issue was available. Vague, conclusory, or speculative allegations that lack factual substantiation are not sufficient to support an ineffective assistance of counsel claim. Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991). Furthermore, Petitioner has not shown any prejudice resulting from his appellate counsel's failure to raise unidentified claims on appeal. For these reasons, Petitioner's claim is rejected.

## V.   INEFFECTIVE ASSISTANCE OF COUNSEL - BRUTON

Petitioner claims that his trial counsel was ineffective in failing to object to the testimony of Everrick Houston and Lorenzo Carnes. Petitioner contends this testimony was admitted in

violation of <u>Bruton</u>.

Petitioner misunderstands the <u>Bruton</u> doctrine.   In <u>Bruton v.</u>
<u>United States</u>, 391 U.S. 123, 135-36 (1968), the Supreme Court held
that in a joint trial, the admission of a post-arrest statement by
a non-testifying co-defendant that incriminates the defendant
violates the Confrontation Clause.   Notably, "<u>Bruton</u> is only
violated where a statement is offered of a <u>non-testifying</u>
codefendant."   <u>United States v. Horton</u>, 522 Fed. Appx. 456, 461
(11th Cir. 2013) (per curiam) (citing <u>Bruton</u>, 391 U.S. at 135-36.)
<u>Bruton</u>, however, is not violated when, as here, a co-defendant
testifies at trial and is available for cross-examination.

A review of the trial transcript shows that the Government did
not offer into evidence any post-arrest statement made by Everrick
Houston.   While Everrick Houston testified at trial, Petitioner's
trial counsel was not ineffective in failing to object to that
trial testimony as it did not violate <u>Bruton</u>.   While attorney
Ciaravella opted not to cross-examine Everrick Houston (Cr-D-163,
p. 107, l. 7), Petitioner has not demonstrated any prejudice as a
result of that strategic decision.   Carnes' attorney thoroughly
cross-examined Everrick Houston.   (<u>Id.</u> at p. 102-22.)   While doing
so, he attacked Everrick Houston's credibility by pointing out that
he was a convicted felon and hoped to get a reduced sentence in
exchange for his testimony.   (<u>Id.</u>, at p. 107-110, 120-21.)
Petitioner fails to identify any line of questioning that was not

16

inquired of by Carnes' attorney. Nor does Petitioner specify any particular questions his counsel should have asked Everrick Houston.

Further, there was no <u>Bruton</u> violation with regard to the introduction into evidence of co-defendant Carnes' post-arrest statement. Parts of Carnes' post-arrest statement made to law enforcement on August 10, 2009, were introduced into evidence at trial through the testimony of Agent Cobarras. (Cr-D-164, p. 26-27.) Prior to Agent Cobarras' testimony, however, attorney Ciaravella agreed that AUSA Perry had sanitized Carnes' statement to resolve the <u>Bruton</u> issue. (Cr-D-163, p. 7.) Carnes' redacted statement was made a Court exhibit. (CX 2.) Ciaravella did not object to Agent Cobarras testifying in accordance with the sanitized statement. (Cr-D-163, at p. 160-62.)

Agent Cobarras testified that Carnes told him he went to Applebee's to meet with someone who was going to invest in the boat company. (Cr-D-164, p. 26.) According to Cobarras, later in the interview, Carnes told Cobarras that he was at Applebee's to discuss the possibility of purchasing drugs and that he needed money to make ends meet. Cobarras testified that Carnes told him he wanted to get the investor to invest in his business, but needed the money to get his boats out. (<u>Id.</u> at p. 27.)

Agent Cobarras' testimony regarding Carnes' statement, as sanitized, did not directly inculpate Petitioner. Alternatively,

17

even if the admission of that testimony were in violation of
Bruton, Petitioner has not demonstrated prejudice resulting from
his counsel's failure to object to the testimony.   A Bruton
violation is harmless error where the properly admitted evidence of
guilt is overwhelming such that the prejudicial admission of a co-
defendant's statement is insignificant by comparison.   United
States v. Petit, 1556-57 (11th Cir. 1988).   As indicated by the
Eleventh Circuit, the other evidence of Petitioner's guilt was
overwhelming.   See Houston, 418 Fed. Appx. at 893.

Petitioner also claims his counsel should have moved to sever
Petitioner's trial from that of Carnes and should have raised the
issue on appeal.   Generally, however, persons indicted together
should be tried together.   United States v. Cobb, 185 F.3d 1193,
1196 (11th Cir. 1999) (citation omitted); United States v. Cassano,
132 F.3d 646, 650-651 (11th Cir. 1998).   This is particularly true
in conspiracy cases.   United States v. Baker, 432 F.3d 1189, 1236
(11th Cir. 2005).   Severance of co-defendants' trial may be granted
if a single trial would prejudice a defendant.   Fed.R.Crim.P.
14(a).   However, mutually antagonistic defenses are not per se
prejudicial such that severance is required.   Zafiro v. United
States, 506 U.S. 534, 537 (1993).

In order to be entitled to severance pursuant to Rule 14(a),
a defendant must meet the heavy burden of showing that a joint
trial will result in "specific and compelling prejudice."   United

18

States v. Liss, 265 F.3d 1220, 1228 (11th Cir. 2001). "Compelling prejudice occurs when the jury is unable to separately appraise the evidence as to each defendant and render a fair and impartial verdict." Id. (citation omitted.)

Petitioner fails to show prejudice resulting from his counsel's failure to file a motion to sever and raise the issue on appeal. Petitioner's defense was that there was not sufficient evidence to prove beyond a reasonable doubt that Petitioner had an agreement with others to distribute cocaine. Carne's defense was he had no intention of purchasing or distributing cocaine; rather, he was playing a role as directed by the CI Sammy to get an investor in the boat company. These defenses were not so antagonistic to one another as to create undue, compelling prejudice. Howard v. United States, Nos. 2:11-cv-298-FtM-29; 2:08-cr-66-FtM-29DNF, 2012 WL 2865745, at *6 (M.D. Fla. July 11, 2012) (the court found no ineffective assistance of counsel in failing to seek severance where petitioner's defense that there was no proof he was given the drugs by his co-defendant to hand to the undercover officer was not so antagonistic with his co-defendant's defense of insufficient evidence as to create undue, compelling prejudice.) Furthermore, the Court instructed jury to consider each defendant and evidence against them separately. "[C]autionary instructions to the jury to consider the evidence separately are presumed to guard adequately against prejudice.' " United States

19

v. Francis, 131 F.3d 1452, 1459 (11th Cir.1997) (citation omitted).
Consequently, Petitioner has failed to demonstrate his counsel's
failure to move for severance or raise the issue on appeal
prejudiced his case.

## VI.   INEFFECTIVE ASSISTANCE OF COUNSEL – MOTION TO SUPPRESS

Petitioner claims his counsel was ineffective in failing to
file a motion to suppress the audio and videotapes based on
entrapment and that Petitioner was not a participant to the
conspiracy.  Petitioner claims that, had a motion to suppress been
filed and ultimately denied, he could have pled guilty and received
acceptance of responsibility and a reduced sentence prior to the
Government filing a notice of enhanced sentence pursuant to 21
U.S.C. § 851.  He argues that his sentence may have been less than
240 months.

Petitioner fails to demonstrate that his counsel provided
ineffective assistance in failing to file a motion to suppress. In
this regard, entrapment is an affirmative defense and does not
provide a legal basis to suppress evidence.   United States v.
Spratt, Nos. Cr. 06-00080-CB, Cv. 09-00242-CB, 2011 WL 3924174, at
*7 (S.D. Ala. Sept. 7, 2011) ("the Court is unaware of any legal
authority for suppressing evidence based on entrapment"); United
States v. Donaldson, No 4:10-CR-047-01-HLM, 2011 WL 1597685, at *6
(N.D. Ga. April 26, 2011) ("an entrapment defense, regardless of
its merits at trial, is not a valid basis for the suppression of

evidence"). Further, whether the evidence demonstrated that Petitioner conspired to possess with the intent to distribute cocaine was a question of fact for the jury and also does not provide a basis to suppress the evidence.

Additionally, Petitioner fails to demonstrate prejudice. While he claims he could have pled guilty without the § 851 enhancement, a review of the criminal file shows that Petitioner was arrested and had an initial appearance on the criminal complaint on August 10, 2009. (Cr-D-8.) Three days later, on August 13, 2009, the Government filed its Indictment against Petitioner as well as an Information and Notice of Prior Conviction Pursuant to 21 U.S.C. § 851. (Cr-D-12, 13.) Petitioner provides no evidence that the Government would have withdrawn the section 851 notice in the event Petitioner had agreed to plead guilty. Notably, Petitioner appeared on December 3, 2009, to enter a guilty plea pursuant to a written plea agreement. (Cr-D-92; 192.) Nothing in the record reflects that the Government intended on withdrawing the section 851 notice in exchange for Petitioner's entry of a guilty plea. In any event, Petitioner, however, ultimately decided to proceed with trial and stated as such in open court. (Id. at p., 11.)

**VII. PETITIONER'S SECOND MOTION TO SUPPLEMENT/AMEND**

Petitioner seeks to amend his § 2255 motion a second time. He argues that Alleyne, in which the Supreme Court held that "[a]ny

fact that, by law, increases the penalty for a crime is an
'element' that must be submitted to the jury," requires that his
sentence be vacated because his prior convictions were not charged
in the indictment and proven to a jury beyond a reasonable doubt.
133 S.Ct. 2151, 2155 (2013).

Petitioner's argument is foreclosed by Almendarez-Torres v.
United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350
(1998).   In Almendarez-Torres, the Supreme Court held that, for
sentencing enhancement purposes, a defendant's prior conviction
does not have to be alleged in the indictment or submitted to a
jury and proven beyond a reasonable doubt.   523 U.S. 224, 226-27,
239-40. Notably, Alleyne did not overrule Almendarez-Torres.   See
Alleyne, 133 S.Ct. at 2160 n.1 (noting that "[i]n Almendarez-Torres
v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350
(1998), we recognized a narrow exception to this general rule for
the fact of a prior conviction. Because the parties do not contest
that decision's vitality, we do not revisit it for purposes of our
decision today.")

The Eleventh Circuit recently rejected a similar claim
relating to the sentencing court finding predicate ACCA convictions
to enhance a defendant's sentence.   United States v. Flowers, 531
Fed. Appx. 975 (11th Cir. 2013) (per curiam).   In Flowers, the
court explained:

> Flowers's reliance on Alleyne is unavailing.
> Alleyne did not address prior-conviction sentencing

22

> enhancements.   Instead, <u>Alleyne</u> merely extended the rationale of <u>Apprendi,</u> which itself noted that the Sixth Amendment did not require "the fact of a prior conviction" to be submitted to a jury and proved beyond a reasonable doubt. <u>See</u> <u>Apprendi</u>, 530 U.S. at 490, 120 S.Ct. at 2362-63 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (emphasis added)); <u>see</u> <u>also</u> <u>Almendarez-Torrez v.</u> <u>United States</u>, 523 U.S. 224, 247, 118 S.Ct. 1219, 1233 (1998) (holding that, for sentencing enhancement purposes, a defendant's prior conviction need not be alleged in the indictment or submitted to the jury and proved beyond a reasonable doubt). In fact, the <u>Alleyne</u> Court explicitly stated that it was not revisiting "the narrow exception to this general rule for the fact of a prior conviction." <u>Alleyne</u>, 570 U.S. at ----, 133 S.Ct. at 2160 n. 1. Flowers has not shown that his ACCA-enhanced fifteen-year mandatory minimum violated his Sixth Amendment rights.

<u>Flowers</u>, 531 Fed. Appx. at 984.

Given the foregoing, Petitioner is not entitled to relief as to this claim, and, as such, his motion to supplement is denied.

### EVIDENTIARY HEARING

Lastly, as to Petitioner's request for an evidentiary hearing, Petitioner has failed to demonstrate the need for such a hearing. The Court need not conduct an evidentiary hearing where it is evident from the record that the petitioner was not denied effective assistance of counsel. <u>Diaz v. United States</u>, 930 F.2d 832, 834 (11th Cir. 1991). Based on the foregoing analysis, the Court does not find that an evidentiary hearing is warranted.

It is therefore ORDERED that:

(1)   Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set

Aside, or Correct Sentence by a Person in Federal Custody (CV-D-1; CR-D-426) is DENIED.

(2) Petitioner's motion styled "Motion for Leave to Supplement and Amend his Section 2255 Motion Pursuant to 28 U.S.C. § 2255(f)(1) Filed on June 21, 2012, with Additional Supporting Authorities, Facts and Law from the Supreme Court's Recent Decision of Alleyne v. United States, Case Number 11-9335 (decided June 17, 2013)" (D-19) is DENIED.

(3) The Clerk is directed to enter judgment in favor of the Government and CLOSE the civil case file.

## CERTIFICATE OF APPEALABILITY AND

## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v.

24

McDaniel 529 U.S. 473, 484 (2000)), or that "the issues presented
were 'adequate to deserve encouragement to proceed further,'"
Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting
Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has
not made the requisite showing in these circumstances. Finally,
because Petitioner is not entitled to a certificate of
appealability, he is not entitled to appeal in forma pauperis.

DONE AND ORDERED at Tampa, Florida this 12th day of February,
2014.

WILLIAM J. CASTAGNA
SENIOR UNITED STATES DISTRICT JUDGE

25